# IN THE COURT OF APPEALS OF IOWA

No. 22-0751
Filed July 20, 2022

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**B.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Whitney A. Estwick, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Maura C. Goaley, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights. He claims a lack of clear and convincing evidence in the record to support termination. The father also contends a permissive exception should be applied to preclude termination of his rights. Clear and convincing evidence supports termination of the father's parental rights and the juvenile court properly declined to apply a statutory exception. We affirm.

## I.      Background Facts & Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in May 2021, when Council Bluffs police found the mother unconscious from an apparent drug overdose. After reviving the mother, police located drugs and drug paraphernalia in the mother's apartment, including a syringe in a bowl of baby food. The child, born in September 2020, was removed from parental custody and placed in DHS custody for foster care placement on May 2, 2021. The child could not be placed with the father, who was residing in Nebraska, because he was on probation and lacked suitable housing.

The child was adjudicated as a child in need of assistance (CINA) on July 15, 2021, pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (p) (2021). At the time, the court noted the father's probation status for burglary, forgery, and several drug-related offenses, with three years of probation remaining. The father lacked stable housing and could not be approved to reside in Iowa.

The father visited the child at the initial foster care placement approximately twice prior to July and his incarceration. The father has been incarcerated since July 19, based on probation violations. His incarceration caused communication

problems between himself and DHS.  Contact was not established until January 2022.  The father explains the lack of communication was due to the shortage of money in his account for phone calls.  Paternity testing in January established the father was a biological parent of the child.  The father has been engaged in weekly video-calls with the child since March, a month before the termination hearing.  He expects to be released on his current sentence in May 2022, although he may need to serve an additional twenty-two days in another county and also has an outstanding warrant in Iowa.

The child was placed in a second foster home on December 1, 2021, where he remains.  That placement has adopted two of the child's siblings, which allows the child to maintain a relationship with those siblings.  The child appears to be doing well, and the placement has indicated a willingness to adopt the child.

The State filed a petition to terminate the parents' parental rights on November 29, 2021.  Following hearing in April 2022, the court terminated the father's parental rights under section 232.116(1)(e) and (h).[1]  The father appeals.

## II.    Standard of Review

"We review proceedings terminating parental rights de novo.  We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018) (citations and quotations omitted).  Our primary concern is always the best interests of the child.  Iowa R. App. P. 6.904(3)(o).

---

[1] The mother's parental rights were also terminated.  She has not appealed.

**III.    Discussion**

The father claims the juvenile court improperly found clear and convincing evidence supported termination of his parental rights.  He also contends the court should have applied a statutory exception to termination based on the closeness of the parent-child relationship.[2]

**A.    Statutory Grounds**

The juvenile court relied on section 232.116(1)(e) and (h) to terminate the father's parental rights.  "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under section 232.116." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  "Evidence is 'clear and convincing' when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'"  *Id.* (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).  Where, as happened here, the court terminated the parental rights under multiple statutory grounds, we need only find clear and convincing evidence supports one ground to affirm.  *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).  For purposes of this appeal, we focus on section 232.116(1)(h).[3]

---

[2] The father makes a generalized statement in the last paragraph of his brief that he was not provided reasonable efforts.  However, without authority or further argument, we deem such issue to be waived.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[3] Section 232.116(1)(h) provides for terminating parental rights when the court finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

The father only contests the final element—whether the child could safely be returned at the present time. "[A]t the present time" means at the time of the termination hearing. *D.W.*, 791 N.W.2d at 707. The father remained incarcerated at the time of the termination hearing. Therefore, the child could not be returned to his custody. Further, placement with the child upon the father's release in May as urged by the father presents significant concerns. The father testified that he can reside at the Open Door Mission and that the child could also reside there. He has employment when released.

However, the father did not complete substance-abuse or mental-health treatment in prison.[4] The DHS caseworker assigned to the case indicated that merely having a place for the child to live is insufficient to protect against further adjudicatory harm. If released, the father would be starting at square one with services, though the child has been out of parental custody for nearly a year.[5] Moreover, it is not clear whether the father will face further legal difficulties upon his release, including additional time to be served in Nebraska and an outstanding warrant in Iowa. The child could not safely be returned to the father's custody at the time of the termination hearing and termination was appropriate.

---

or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[4] The father suggested that in lieu of services, which he contends are not offered at the jail, he attends church and bible study.

[5] The father does not appeal the juvenile court's denial of an extension of time for reunification services.

### B.      Parent-Child Bond

The father claims the court should have declined to terminate his parental rights based on the close bond he shares with his child.[6]  A juvenile court may decline to terminate based on exceptions found in section 232.116(3).  These factors "are permissive, not mandatory."  *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted).  Section 232.116(3)(c) allows the court to decline to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

The relationship between the father and child is insufficient to preclude termination.  The father has been incarcerated for much of the child's life.  There has been minimal contact since the father was incarcerated in July, with weekly virtual visits beginning just a month before the hearing.  The father points to the child referring to him as his father on the video visits.  However, the foster placement informed the DHS caseworker that the child "engages as a small child who sees somebody on the screen." We agree with the juvenile court's assessment that the father's previous decisions "have stunted the development of any true parent-child bond."  Based on the record before us, the father has not demonstrated that termination will be detrimental to the child based on a bond.

**AFFIRMED.**

---

[6] The father commingles a best interest argument as part of his permissive exception argument.  While not set out as a separate issue, on our de novo review, we determine termination of the father's parental rights is in the child's best interest.